# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROSALYN JOHNSON, on behalf of herself and all others similarly situated | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 13-1186-LPS |
| ACE CASH EXPRESS, INC., | : : | CLASS ACTION |
| Defendant. | : | |

---

Richard H. Cross, Jr., Esq., Christopher P. Simon, Esq., CROSS & SIMON, LLC, Wilmington, DE.

Alexander J. Pires, Jr., Esq., PIRES COOLEY, Washington, DC.

      Attorneys for Plaintiffs.


Arthur G. Connolly, III, Esq., Christos T. Adamopoulos, Esq., CONNOLLY GALLAGHER LLP, Wilmington, DE.

Claudia Callaway, Julian Dayal, KATTEN MUCHIN ROSENMAN LLP, Washington, DC.

      Attorneys for Defendant.

---

## **MEMORANDUM OPINION**




July 24, 2014
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is Defendant's motion to stay and compel arbitration and

Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

(D.I. 16)  Defendant argues that Plaintiff's claims must be arbitrated due to an arbitration

agreement. Alternatively, Defendant argues that Plaintiff has failed adequately to plead fraud or

otherwise state a claim upon which relief may be granted. The Court agrees in large part with

Defendant but will provide Plaintiff leave to amend.

## BACKGROUND

On July 3, 2013, Rosalyn Johnson ("Johnson" or "Plaintiff") filed her Complaint against

ACE Cash Express, Inc. ("ACE" or "Defendant") alleging that ACE had breached its duty of fair

dealing towards Johnson and had violated the Delaware Consumer Fraud Act ("DCFA").  (D.I.

1)  On August 9, 2013, Johnson filed an Amended Complaint asserting the same claims.  (D.I.

14)  On September 10, 2013, ACE filed the pending motions.  (D.I. 16)  The Court heard oral

argument on November 22, 2013.  (D.I. 20, 22)

According to the Amended Complaint, Johnson borrowed $450 from ACE in March

2013.  (D.I. 14 at ¶ 10)  She then borrowed another $450 from ACE in June 2013.  (*Id.*)  Both the

March loan and the June loan were secured by a lien on, and electronic access to, Johnson's bank

account.  (*Id.*)  Both loans are subject to agreements detailing the interest ACE will charge and a

loan repayment schedule.  (*See id.* at ¶ 25)

Both loan agreements also contain arbitration agreements, providing (in part) that "any

legal dispute . . . that has anything at all to do with . . . this Arbitration Agreement [and/or] the

Loan Agreement" is to be "resolved by binding arbitration."  (D.I. 16 Ex. 1 at 3)  The Arbitration

1

Agreement further provides that if a borrower chooses to bind herself and ACE to the arbitration agreement, she must do so by affirmatively agreeing to the arbitration agreement – a decision from which the borrow may opt out within 30 days after accepting the loan.

Johnson agreed to the arbitration agreement for the March loan ("March Arbitration Agreement") but opted out of the arbitration agreement for the June loan ("June Arbitration Agreement"). (D.I. 16 at 3-4, 6) ACE argues that Johnson's causes of action arise out of the March loan agreement and, therefore, are subject to the March Arbitration Agreement. Johnson contends that her causes of action arise solely out of the June loan agreement and, hence, are not subject to any arbitration agreement. Both parties agree that if Johnson's case arises solely out of the June agreement, then Johnson is not required to arbitrate her claim. (D.I. 22 at 10-11)

## MOTION TO STAY AND COMPEL ARBITRATION

ACE moves to stay these proceedings and compel arbitration under the Federal Arbitration Act ("FAA"). "The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ('FAA'), creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 522 (3d Cir. 2009). Section 3 of the FAA requires that

> [i]f any suit . . . [is] referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. Under Section 4,

2

> [a] party aggrieved by the . . . refusal of another to arbitrate under a
> written agreement for arbitration may petition any United States
> district court which, save for such agreement, would have
> jurisdiction under Title 28, in a civil action . . . arising out of the
> controversy between the parties, for an order directing that such
> arbitration proceed in the manner provided for in such agreement.

*Id.* at § 4. Thus, "upon being satisfied that the issue involved . . . is referable to arbitration," a

district court must, upon "application of one of the parties" stay proceedings and compel

arbitration. *Id.* at § 3.

"[A]rbitration is a matter of contract and a party cannot be required to submit to

arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v.

Communications Workers of Am.*, 475 U.S. 643, 648 (1986). "[W]hether or not [a party is]

bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the

Court on the basis of the contract entered into by the parties." *Id.* at 649. Accordingly, "[b]efore

compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an

agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."

*Century Indem. Co.*, 584 F.3d at 523.

"In resolving the arbitrability of particular claims, however, a court is not to rule on the

potential merits of the underlying claims." *Painewebber Inc. v. Hofmann*, 984 F.2d 1372, 1377

(3d Cir. 1993). Moreover, "there is a presumption of arbitrability in the sense that an order to

arbitrate the particular grievance should not be denied unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute. Doubts should be resolved in favor of coverage." *Id.* "In determining if parties have

agreed to arbitrate, [courts] apply ordinary state-law principles that govern the formation of

3

contracts." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010).

It is undisputed that the March loan agreement contains an agreement to arbitrate. It is further undisputed that if the issues in this case arise solely out of the June loan agreement, then Johnson's claims are not subject to an arbitration agreement. The parties disagree as to whether their dispute falls within the scope of the June agreement or the March agreement.

ACE contends that this lawsuit is subject to the March Arbitration Agreement because Johnson's allegations arise out of the March loan agreement. In support of its position, ACE points to paragraphs 35-38 of the Amended Complaint, which allege:

> 35.  Plaintiff ROSALYN JONES [sic] entered into a loan agreement with Defendant ACE CASH EXPRESS, INC. on or about March 28, 2013.
>
> 36.  Plaintiff borrowed $450 to cover a short-term cash flow problem. At the time she borrowed the principal, she did not understand fully the financial or legal terms of her loan document, contained in a 17-page, single-spaced document written in what appears to be 10-point font. She did not understand that she had the right of rescission, or a right to decline ACH authorization. She did not understand that she was committing to mandatory arbitration unless she opted out. She did not understand how to opt out of the arbitration clause. She had no knowledge of her legal rights, or the statutory obligations of the Defendants.
>
> 37.  Plaintiff made the first four payments due under her loan. When Defendant took what was to be the fifth and last payment, Plaintiff had insufficient funds in her bank account and it caused an overdraft on her bank account. As a result, Plaintiff obtained a new loan from Defendant to cover the overdraft and other expenses.
>
> 38.  Plaintiff has been unable to repay the first loan in

4

> the short-term manner advertised. She is now
> locked into a new long-term obligation with
> exorbitant interest rates, penalties and terms.

(D.I. 18 at 2; D.I. 14 at ¶¶ 35-38)  ACE argues that because Johnson's "claims are inextricably based upon her March 28, 2013 Installment Loan Agreement, her claims must be stayed, and arbitration must be compelled." (D.I. 18 at 3)

Under the March Arbitration Agreement, "any legal dispute . . . that has *anything at all to do with* . . . this Arbitration Agreement [and/or] the Loan Agreement" is to be "resolved by binding arbitration." (D.I. 16 Ex. 1 at 3) (emphasis added)  The Court finds that the claims in this suit do have *something* "to do with" the March loan agreement.  In particular, paragraph 38 of the Amended Complaint pleads the alleged misrepresentation – that the "first loan" (that is, the March loan), was "short-term" – which forms the basis for Johnson's claim of Consumer Fraud.  (D.I. 14 at Count I)  Similarly, Johnson's inability to repay her first loan stems, at least partly, from ACE's alleged breach of its duty of fair dealing.  (D.I. 14 at Count II)  Because "the dispute is one that, on its face, falls within the arbitration clause of the contract," *SBC Interactive, Inc.*, 714 A.2d at 761, the Court finds that the dispute, as alleged, falls within the scope of the March Arbitration Agreement.

Even so, the Court will not enforce the arbitration agreement if it is unconscionable. Johnson contends it is unconscionable as, in her view, the entirety of loan agreements is unconscionable.  (D.I. 14 at ¶¶ 30-33; D.I. 17 at 12-14)  ACE responds that the Court may only examine whether the arbitration agreement, not the entirety of the loan agreement, is unconscionable, and of course takes the position that it is not.  (D.I. 18 at 3-4)

In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the Supreme Court

considered a case arising out of facts similar to those alleged here. The plaintiffs in *Buckeye*

entered into what they alleged was an unconscionable agreement with Buckeye Check Cashing,

Inc. The *Buckeye* Plaintiffs contended that Buckeye "violated various . . . lending and consumer-

protection laws," stemming in part from the allegedly usurious interest rates that Buckeye

charged. *Id.* at 443. The agreement in *Buckeye* contained a binding arbitration agreement, which

the plaintiffs argued was invalid because the entire agreement between the plaintiffs and Buckeye

was unconscionable. *See id.* The Supreme Court held:

> First, as a matter of substantive federal arbitration law, an
> arbitration provision is severable from the remainder of the
> contract. Second, unless the challenge is to the arbitration clause
> itself, the issue of the contract's validity is considered by the
> arbitrator in the first instance. Third, this arbitration law applies in
> state as well as federal courts. The parties have not requested, and
> we do not undertake, reconsideration of those holdings. Applying
> them to this case, we conclude that ***because respondents challenge***
> ***the Agreement, but not specifically its arbitration provisions,***
> ***those provisions are enforceable apart from the remainder of the***
> ***contract. The challenge should therefore be considered by an***
> ***arbitrator, not a court.***

*Id.* at 445-46 (emphasis added). It follows that to the extent Johnson is asking the Court to find

the entire loan agreements unconscionable, the Court lacks jurisdiction to do so. The "challenge

to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to

the arbitrator." *Id.* at 449.

However, to the extent Johnson is asserting that the arbitration provision itself is

unconscionable, this Court may – and, here, will – resolve that narrower question. *See id.* at 446

(stating "[i]f the claim is . . . an issue which goes to the making of the agreement to arbitration –

the federal court may proceed to adjudicate it"). To do so, the Court must first resolve the

parties' choice of law dispute. The March Arbitration Agreement contains an "Applicable Law"

provision, stating that it "is governed by the Federal Arbitration Act ('FAA') . . . (and by Texas

law to the extent state law governs the enforceability of this Arbitration Agreement under section

2 of the FAA)." (D.I. 16 Ex. 1 at 3) There is no disagreement that the FAA is controlling.

However, Johnson argues that Delaware law applies to the unconscionability determination,

because the entire loan agreement (including the "Applicable Law" provision), is unconscionable

(*see* D.I. 17 at 12-14), while ACE insists that Texas law applies because Johnson and ACE

agreed to the application of Texas law to such disputes (*see* D.I. 16 Ex. 1 at 3).

"[U]nder the [FAA, arbitration] is a matter of consent, not coercion, and parties are

generally free to structure their arbitration agreements as they see fit." *Volt Info. Sciences, Inc. v.*
*Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). "That freedom

extends to choice-of-law provisions governing agreements, including agreements to arbitrate."
*Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007). When a district court's jurisdiction is

based on diversity of citizenship, the court applies the choice-of-law principles of the forum

state. *See id.*; *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).

"[I]t is only in rare circumstances that Delaware courts do not honor the choice-of-law

provisions agreed to by parties in a binding contract." *Coface Collections N. Am. Inc. v. Newton*,

430 Fed. Appx. 162, 166 (3d Cir. June 6, 2011). Delaware courts routinely apply the

Restatement (Second) of Conflict of Laws to choice-of-law provisions. *See Total Holdings USA,*
*Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 881 (Del. Ch. 2009) (noting that "Delaware law

applies . . . the traditional choice of law analysis" as recited by Section 187(2) of the Restatement

7

(Second) of Conflict of Laws). Under § 187, a choice-of-law provision will be enforced unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971).

The Court agrees with ACE that Texas has a substantial relationship to the parties because ACE's operations are headquartered there. (D.I. 16 at 11) This connection is sufficient to meet the "substantial relationship" test of § 187(2)(a). *See CreditInform*, 511 F.3d at 390 (noting that for § 187(2)(a) purposes, because "[Plaintiff]'s Agreement state[d] that she purchased services 'provided by [Defendant]' which [was] 'located in Chantilly, Virginia,'" Virginia "ha[d] a substantial relationship to [Defendant]"). With respect to § 187(2)(b), Johnson does not provide, and the Court does not find, any reason why Delaware "has a materially greater interest" than Texas in the determination of this issue. (*See* D.I. 17 at 8 n.5) Although Delaware has an interest in protecting its consumers, Texas has no lesser interest in protecting businesses located there. *See CreditInform*, 511 F.3d at 390 (finding that "[t]hough it certainly is true that Pennsylvania has an interest in protecting its consumers, we cannot say that Virginia has a lesser interest in protecting businesses located in it"). Thus, applying Delaware's choice-of-law provisions, the Court determines that Texas law governs the inquiry into whether the March loan

agreement's arbitration provision is unconscionable.

Undertaking that analysis, the Court further concludes that the arbitration provision is not unconscionable. Under Texas law, "[t]here is nothing per se unconscionable about arbitration agreements." *Serv. Corp. Int'l v. Lopez*, 162 S.W.3d 801, 809 (Tex. App. 2005). In Texas, "[u]nconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). It takes more than a "party's refusal to contract with another absent an arbitration provision . . . [to] establish procedural unconscionability." *Obra Homes, Inc. v. Gonzalez*, 2010 WL 2224662, at *8 (Tex. App. June 3, 2010).

Here, Johnson affirmatively chose to be bound by the March Arbitration Agreement, even though doing so was not necessary in order to secure a loan through ACE. She signed up for the loan online and points to nothing in the "circumstances surrounding the adoption of the arbitration" agreement that was procedurally unconscionable.

Nor was the arbitration provision substantively unconscionable. The arbitration agreement allows Plaintiff to choose the arbitrator, does not limit or restrict Plaintiff's remedies, allows Plaintiff to request payment of her arbitration fees, provides that arbitration will take place in a location convenient to Plaintiff, and provides that Plaintiff will obtain at least $5,100 if she prevails at arbitration on a claim that was previously presented to, but rejected by, ACE. The March Arbitration Agreement also binds both parties to arbitration. Given these facts, the March Arbitration Agreement is not unfair towards Johnson and is not substantively unconscionable.

9

In sum, Johnson agreed to an enforceable and not unconscionable arbitration agreement in connection with the March loan agreement. Her claims, as currently pled in the Amended Complaint, relate to that March loan agreement, making her claims subject to arbitration. It follows that if Johnson wishes to stand on her allegations as currently pled, Defendants' motion will have to be granted to the extent that the Court will have to compel arbitration.

## LEAVE TO AMEND

During oral argument, Plaintiff's counsel stated that, if necessary, Plaintiff could amend her Amended Complaint and re-plead exclusively based on the June agreement. (D.I. 22 at 32) (stating that Plaintiff could "certainly do that") The Court will grant Plaintiff leave to amend to do so.

Under Rule 15(a) of the Federal Rules of Civil Procedure, after a responsive pleading has been filed, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The decision to grant or deny leave to amend is within the discretion of the Court. *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). In exercising its discretion, the Court considers possibility of "undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). A party suffers undue prejudice if the proposed amendment causes surprise, results in additional discovery, or adds costs to the litigation in defending against the new facts or theories alleged. *See Cureton v. Nat'l Collegiate Athletic Ass 'n,* 252 F.3d 267, 273 (3d Cir. 2001). "Further, if prejudice to the nonmovant exists, the Court must balance the prejudice to the non-moving party against the harm to the movant if leave to amend is not granted, keeping in mind that the goal is to have cases decided on the merits."

10

*Smith v. State of Delaware*, 2009 WL 2175635, at *3 (D. Del. July 21, 2009) report and recommendation adopted sub nom. *Smith v. Delaware*, 2009 WL 3193136 (D. Del. Oct. 3, 2009).

ACE argues that it would be unduly prejudiced if the Court were to grant Johnson leave to amend her Amended Complaint because an allegation based solely on the June agreement would be "an entirely different case." (D.I. 22 at 15) The Court is not persuaded this is correct. In any event, this case is in its early stages and the proposed amendments are unlikely to cause any substantial surprise or to materially increase the cost of litigation. Moreover, the prejudice to Johnson by forcing her to go to arbitration after she had affirmatively opted out of the June Arbitration Agreement, and after she has requested the opportunity to re-plead her case based solely on the June agreement, would exceed any prejudice caused to ACE as a consequence of permitting Johnson the opportunity to proceed here on claims that are not subject to the March arbitration agreement.

Accordingly, the Court will deny Defendant's motion to stay and compel arbitration and will grant Plaintiff's request for leave to file a Second Amended Complaint.

## ADEQUACY OF PLEADINGS

ACE further argues that even if Johnson's current claims were found to arise exclusively out of the June loan agreement, the Court should still dismiss her claims of unfair dealing and fraud, as they fail to state a claim upon which relief can be granted under Rule 12(b)(6) and for failing to plead fraud with sufficient particularity under Rule 9(b). Although the Court has not found that Johnson's claims arise exclusively out of the June loan agreement, it has granted Johnson leave to attempt to re-plead with allegations that do arise exclusively out of the June loan agreement. Under the circumstances – including the general preference for resolving cases

11

on their merits, rather than pleading inadequacies; that this motion has now been pending before

the Court for quite some time; and Plaintiff's representation that she does, in fact, intend to file a

Second Amended Complaint – the Court addresses these further arguments pressed by

Defendant.

### Good Faith and Fair Dealing

Johnson alleges that "Defendant deceitfully misleads borrowers by advertising its loans as

short-term loan products when Defendant knows the unconscionable loan terms will likely trap

consumers . . . in a cycle of expensive, onerous debt." (D.I. 17 at 16; D.I. 14 at ¶¶ 16-25) "These

allegations," according to Johnson, "are sufficient to prove a claim of a violation of the duty of

good faith and fair dealing." (D.I. 17 at 16) ACE moves to dismiss Johnson's claim of breach of

the duty of good faith and fair dealing for failing to state a claim upon which relief may be

granted pursuant to Rule 12(b)(6).

Under Delaware law, "[a]ll contracts are subject to an implied covenant of good faith and

fair dealing." *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). "[The

implied covenant] requires contracting parties to refrain from arbitrary or unreasonable conduct

which has the effect of preventing the other party to the contract from receiving the fruits of the

bargain." *Matthew v. Laudamiel*, 2012 WL 605589, at *16 (Del. Ch. Feb. 21, 2012). However,

"[w]ielding the implied covenant is a 'cautious enterprise.'" *Id.* at *17. "This quasi-reformation

. . . should be a rare and fact-intensive exercise, governed solely by issues of compelling

fairness." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). This covenant

is a way to import terms into the agreement to analyze unanticipated developments or to fill gaps

in the contract's provisions. *Id.* "In order to plead successfully a breach of an implied covenant

of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Fitzgerald*, 1998 WL 842316, at *1.

Johnson does not specify the implied contractual obligation ACE has breached. Instead, she makes the general allegation that ACE misleads consumers and traps them in cyclical and onerous debt. These allegations do not relate to any specific implied contractual obligation that ACE owes its customers. Moreover, Johnson does not specify a "gap" in the contract that needs to be filled through an implied obligation. (D.I. 22 at 26) Merely alleging that contract terms are unfair is not sufficient to state an unfair dealing claim. As the Delaware Supreme Court has noted, "[p]arties have a right to enter into good and bad contracts, the law enforces both." *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010). Hence, as currently plead, Johnson has failed adequately to plead a breach of the implied covenant of good faith and fair dealing.

### Delaware Consumer Fraud Act

ACE also moves for dismissal of Johnson's Consumer Fraud claim for failing to meet the pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that, when alleging fraud, "a party must state with particularity the circumstances constituting fraud." This requirement applies to claims asserted under Delaware's Consumer Fraud Act. *See Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433, 438 (D. Del. 2007). "Rule 9(b) does not require an exhaustive catalog of facts[;] it merely requires sufficient factual specificity to provide assurance that plaintiff has investigated and reasonably believes that a fraud has occurred." *LG Electronics, Inc. v. ASKO Appliances, Inc.*, 2010 WL 1377255, at *2 (D. Del. Mar. 29, 2010).

13

Under the DCFA,

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

5 Del. C. § 2513. Thus, to adequately plead a DCFA claim, a plaintiff "must allege at least a negligent misrepresentation or omission of a material fact" with the intent that the plaintiff rely on such omission. *Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743, at *9 (D. Del. Sept. 30, 2008), *aff'd*, 346 Fed. Appx. 859 (3d Cir. Sept. 24, 2009). "Because Rule 9(b) applies to claims arising under [the Delaware Consumer Fraud Act] . . . Plaintiffs must plead such misrepresentation or omission with particularity." *Id.* at *14 (internal quotation marks omitted).

Johnson's Amended Complaint alleges that ACE "aggressively markets [its] loans as short-term credit solutions" as a way to "induce borrower[s]" to enter into "long-term[] and unduly expensive loan[s]." (D.I. 14 at ¶¶ 15-16) Johnson also alleges that ACE "conceals its true business model[] from borrowers" and "deceptively market[s] its payday loans as short-term solutions even though [ACE] makes such loans with the expectation that borrowers will become saddled with a longer-term debt, structured in such a way as to make repayment all but impossible." (*Id.* at ¶ 20) As factual support for these allegations, Johnson attached an ACE advertisement describing "Payday loans" as being "short-term credit solutions, quick access ('Easy Application,' 'Quick Money') to cash to pay for an unanticipated expense, such as a car repair bill, overdue utility bill or emergency travel expenses." (*Id.* at ¶ 15, Ex. C) Johnson also alleges that she was damaged by these practices by being locked into a long-term loan agreement

14

that is "harming Plaintiff's ability to pay rent, purchase food, and otherwise cover basic living expenses." (*Id.* at ¶ 4)

However, as ACE correctly pointed out during oral argument, the attachment to the Amended Complaint refers to "Payday loans," not "Installment Loans." (D.I. 22 at 42) The loan agreements giving rise to this case both relate to Installment Loans, which are different from Payday loans. As such, Johnson's only factual support for her claim of Consumer Fraud is inapposite. Unless Johnson can provide more relevant factual support for her claim of Consumer Fraud, it is likely that her DCFA claim will be found not to meet the particularity requirement of Rule 9(b).

<h3 align="center">INJUNCTIVE RELIEF</h3>

ACE also moves to dismiss Johnson's request for injunctive relief. Temporary relief during the pendency of this action is unnecessary, as ACE "has already, pending the outcome of this case, agreed to cease collection of amounts due under [Johnson]'s loan, making [Johnson]'s request for temporary injunctive relief moot." (D.I. 17 at 19-20) Johnson's request for a permanent injunction "is a remedy, not a cause of action," and Johnson "must have a cause of action to seek a remedy." *Birdman v. Office of the Governor*, 677 F.3d 167,172 (3d. Cir. 2012). As such, if Plaintiff files a Second Amended Complaint which contains a separate claim for a temporary restraining order or a preliminary or permanent injunction, it would likely be subject to a renewed motion to dismiss (although a request for a permanent injunction may, of course, be properly included as among the relief sought in a new complaint).

<h3 align="center">CONCLUSION</h3>

Accordingly, for the reasons stated above, the Court will grant Plaintiff's request to file a

15

Second Amended Complaint and to state claims based exclusively on the June loan agreement, claims which would not be subject to arbitration. The Court will further deny Defendant's motion, but will do so without prejudice to Defendant's ability to again move to dismiss in the event Plaintiff files a Second Amended Complaint. An appropriate order follows.