# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| ROSALYN JOHNSON | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civ. Act. No. 13-1186-LPS |
| ACE CASH EXPRESS INC., | ) | |
| Defendant. | ) | |

Richard H. Cross, Jr., Christopher Page Simon, Cross & Simon LLC, Wilmington, DE, Alexander J. Pires, Jr., Pires Cooley, Washington D.C.

    Attorneys for Plaintiff

Arthur G. Connolly, III, Christos Theodore Adamopoulos, Connolly Gallager LLP, Wilmington, DE, Claudia Callaway, Hatten Muchin Rosenman LLP, Washington D.C.

    Attorneys for Defendant

**MEMORANDUM OPINION**

July 17, 2015
Wilmington, DE

*[signature: Leonard P. Stark]*

**STARK, U.S. District Judge:**

Pending before the Court is Defendant Ace Cash Express Inc.'s ("Defendant") motion to dismiss Plaintiff Rosalyn Johnson's ("Plaintiff") Second Amended Complaint. (D.I. 28) The Court had previously denied without prejudice Defendant's motion to dismiss Plaintiff's Amended Complaint and granted Plaintiff's request for leave to file the Second Amended Complaint. (D.I. 24, 25)[1] For the reasons stated below, the Court will grant Defendant's motion.

## I. BACKGROUND[2]

Plaintiff obtained a $450 loan from Defendant on June 16, 2013. (D.I. 27 at 2) Defendant is engaged in the business of marketing, advertising, and making short-term loans, including payday and installment loans. (*Id.* at 3)

Plaintiff filed her initial Complaint on July 3, 2013 (D.I. 1) and her Amended Complaint on August 9, 2013 (D.I. 14). Following briefing and oral argument, the Court on July 24, 2014 issued a Memorandum Opinion identifying deficiencies in the Amended Complaint and granting Plaintiff leave to attempt to correct those deficiencies in a Second Amended Complaint. (*See* D.I. 24, 25)

The Second Amended Complaint is materially identical to the earlier Complaint and Amended Complaint. Essentially, it alleges:

> Plaintiff borrowed $450 to cover a cash flow problem. At the time

---

[1] Except where necessary, the Court will not reiterate the analysis provided in its earlier Memorandum Opinion. (D.I. 24) However, much of that analysis remains pertinent here (and is incorporated by reference) and Plaintiff has not persuaded the Court that her new pleading overcomes the problems that the Court found in the Amended Complaint.

[2] For purposes of reviewing the pending motion, the Court takes the facts alleged in the Second Amended Complaint as true.

1

> she borrowed the principal, she did not understand fully the
> financial or legal terms of her loan document, contained in a
> 17-page, single-spaced document written in what appears to be
> 10-point font. She did not understand that she had a right of
> rescission, or a right to decline ACH authorization. She did not
> understand that she was committing to mandatory arbitration
> unless she opted out. She did not understand how to opt out of the
> arbitration clause. She had no knowledge of her legal rights, or the
> statutory obligations of the Defendants.

(D.I. 27 at 10) Plaintiff adds in the Second Amended Complaint the allegation that "Defendant performs no underwriting before issuing loans." (*Id.* at 12)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

When presented with a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), courts conduct a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, courts separate the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. This first step requires courts to draw all reasonable inferences in favor of the non-moving party. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000). However, the Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Second, courts determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a context-specific determination, requiring the court "to draw on its judicial experience and common sense." *Id.* at 679. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation marks omitted). Finally, although a non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 545.

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Although date, place, and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place the

3

defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

## II. DISCUSSION

### A. Breach of Covenant of Good Faith and Fair Dealing

In Delaware, "[a]ll contracts are subject to an implied covenant of good faith and fair dealing." *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). "[The implied covenant] requires contracting parties to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Matthew v. Laudamiel*, 2012 WL 605589, at *16 (Del. Ch. Feb. 21, 2012). However, "[w]ielding the implied covenant is a 'cautious enterprise.'" *Id.* at *17. "This quasi-reformation . . . should be a rare and fact-intensive exercise, governed solely by issues of compelling fairness." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). "In order to plead successfully a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Fitzgerald*, 1998 WL 842316, at *1.

The Court previously concluded that the Amended Complaint failed to specify the implied contractual obligation Defendant breached. (*See* D.I. 24 at 13) The same problem plagues the Second Amended Complaint. Plaintiff's general allegations that Defendant misleads consumers and traps them in cyclical and onerous debt do not state a claim for breach of the implied covenant of good faith and fair dealing since they do not relate to a specific implied contractual obligation Defendant owes Plaintiff. As the Delaware Supreme Court has stated, "[p]arties have a right to enter into good and bad contracts, the law enforces both." *Nemec v.*

4

*Shrader*, 991 A.2d 1120, 1126 (Del. 2010). At bottom, Plaintiff fails to specify a "gap" in the contract that needs to be filled through an implied obligation.

The only new factual allegation in the Second Amended Complaint that is pertinent to the implied covenant claim is the contention that Defendant failed to assess Plaintiff's ability to repay the loan ("underwriting") before making the loan. (*See* D.I. 27 at 11) As Defendant observes, however, Plaintiff cites no authority for the proposition that Defendant had an obligation to underwrite Plaintiff's loan before approving it. (*See* D.I. 32 at 4) Moreover, as Defendant states, "[u]nderwriting . . . is a process undertaken by the lender not for the benefit of a borrower, but for the protection of the lender." (D.I. 28 at 8-9) Thus, again, Plaintiff has failed to identify a specific obligation Defendant has breached.

Accordingly, the Court will dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.[3]

### B.  Delaware Consumer Fraud Act

Plaintiff alleges that Defendant violated the Delaware Consumer Fraud Act ("DCFA"), 6 Del. C. § 2513. The DCFA provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled,

---

[3] *See Zieger v. Advance America*, 2014 WL 7388365 at *4 (D. Del. Dec. 29, 2014) ("[T]he implied covenant of good faith does not exist to protect against contracts that adhere to their terms as contemplated."); *see also* D.I. 33 (notice of supplemental authority regarding *Zieger*, a case which dismissed nearly identical claims directed at nearly identical pay-day loan agreement).

5

deceived or damaged thereby, is an unlawful practice.

*Id.*

The Court found it likely that the Amended Complaint failed to state a claim under the DCFA because it did not satisfy the pleading standards of Rule 9(b). (*See* D.I. 24 at 13-14) Rule 9(b) requires that, when alleging fraud, "a party must state with particularity the circumstances constituting fraud." This requirement applies to claims asserted under the DCFA. *See Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433, 438 (D. Del. 2007). "Rule 9(b) does not require an exhaustive catalog of facts[;] it merely requires sufficient factual specificity to provide assurance that plaintiff has investigated and reasonably believes that a fraud has occurred." *LG Electronics, Inc. v. ASKO Appliances, Inc.*, 2010 WL 1377255, at *2 (D. Del. Mar. 29, 2010). Therefore, a plaintiff "must allege at least a negligent misrepresentation or omission of a material fact" with the intent that the plaintiff rely on such omission. *Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743, at *9 (D. Del. Sept. 30, 2008), *aff'd*, 346 Fed. Appx. 859 (3d Cir. Sept. 24, 2009).

Like the Amended Complaint, the Second Amended Complaint alleges that Defendant "aggressively markets [its] loans as short-term credit solutions" as a way to "induce borrower[s]" to enter into "long-term[] and unduly expensive loan[s]." (D.I. 27 at 6) Once again, Plaintiff alleges that Defendant "conceals its true business model[] from borrowers" and "deceptively market[s] its payday loans as short-term solutions even though [Defendant] makes such loans with the expectation that borrowers will become saddled with a longer-term debt, structured in such a way as to make repayment all but impossible." (*Id.*)

The Court concludes that these allegations fail to satisfy Rule 9(b). As Defendant argues:

"She does not allege that the terms of her loan, her right of rescission, her right to decline ACH authorization, her right to opt out of arbitration, or even her legal rights were *concealed* from her, or that ACE lied to her in any way." (D.I. 28 at 11) Instead, she alleges that she did not understand what was being represented and offered to her, but in the context of the Second Amended Complaint this fails to state a claim for fraud. *See generally Pellaton v. Bank of New York*, 592 A.2d 473, 477 (1991) ("It will not do for a [wo]man to enter into a contract and, when called upon to respond to its obligations, to say that [s]he did not read it when [s]he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.").

Nor is the Court persuaded that Plaintiff has alleged with particularity a material omission, for reasons including that she has failed to show that Defendant had an obligation to disclose its business model and/or motivations to Plaintiff in connection with offering to do business with her. Nor does she adequately allege that anything relating to Defendant's purported business model translated into a specific act taken against her.

Accordingly, the Court will dismiss Plaintiff's DCFA claim.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (D.I. 28) will be granted. Plaintiff will not be given another opportunity to amend, so the case will be closed. An appropriate Order follows.